IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAWN H.,[1]

                Plaintiff,

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

No. 6:24-cv-01997-HZ

OPINION & ORDER

Rory J. Linerud
Linerud Law Firm
PO Box 5734
Salem, OR 87304

     Attorney for Plaintiff

Kevin Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Michael J. Mullen
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235

      Attorneys for Defendant

HERNÁNDEZ, Senior District Judge:

Plaintiff Dawn H. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on December 30, 2020, alleging an onset date of August 1, 2019. Tr. 60.[2] Plaintiff's date last insured ("DLI") is December 31, 2023. Tr. 60. Her application was denied initially and on reconsideration. Tr. 125, 130, 139.

On October 18, 2023, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 38. On December 15, 2023, the ALJ found Plaintiff not disabled. Tr. 32. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on depression, diabetes, "back," anxiety, hepatitis C, "liver," and arthritis. Tr. 281. At the time of her alleged onset date, she was forty-four years old.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

Tr. 31. She has at least a high school education and past relevant work experience as a "cashier/checker." Tr. 30-31.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 19. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "lumbar degenerative disc disease, right knee osteoarthritis, obesity, diabetes mellitus, depression and anxiety." Tr. 19. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 21. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [S]he can frequently climb ramps or stairs and never climb ladders, ropes and scaffolds; she can occasionally stoop, kneel, crouch and crawl; she should avoid concentrated exposure to work hazards such as dangerous moving machinery or unprotected heights; she can understand, remember and carry out simple instructions; and she can have occasional contact with the general public and coworkers.

Tr. 23. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 30. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "marker," "routing clerk,"

4 – OPINION & ORDER

and "production assembler." Tr. 31. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 32.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

At its core, this case is about the ALJ's treatment of Plaintiff's reviewing and examining doctors. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant,

specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Here, Plaintiff argues that the ALJ erred in two ways: (1) failing to include all of Plaintiff's mental limitations in the RFC by improperly rejecting the medical opinions of two reviewing physicians as to Plaintiff's ability to adapt and manage herself; and (2) failing include all of Plaintiff's limitations related to her varicose veins by improperly rejecting the opinion of a consultative examiner. Pl. Br. 3, 15, ECF No. 8. The Court agrees with Plaintiff that the ALJ erred in his assessment of the opinions of the reviewing physicians.

## II.    Opinions of Dr. Barsukov and Dr. Tomak

In arguing that Plaintiff's RFC was incomplete, Plaintiff argues that the ALJ erred in discounting the opinions of two reviewing physicians—Sergiy V. Barsukov, Psy.D, and Sheri L.

Tomak, Psy.D—as to Plaintiff's ability to adapt and manage oneself. Pl. Br. 3. Dr. Barsukov provided the initial agency review of Plaintiff's mental health conditions. Tr. 69. In relevant part, Dr. Barsukov opined that Plaintiff had moderate limitations in her ability to adapt or manage oneself. Tr. 71. He further opined that Plaintiff was moderately limited in her ability to "respond appropriately to changes in the work setting" and that she would need a "predictable work environment." Tr. 74. Dr. Tomak reviewed Plaintiff's mental health limitations on reconsideration. Tr. 85. Like Dr. Barsukov, Dr. Tomak opined that Plaintiff was moderately limited in her "ability to respond appropriately to changes in the work setting." Tr. 95. She explained that "[t]he CLMT may experience some difficultly responding to changes in the work setting and would likely be more successful in environments with minimal deviation." Tr. 96.

The ALJ first addressed Plaintiff's mental health limitations at step three in discussing the "paragraph B" criteria of listings 12.04 and 12.06. Tr. 22. The ALJ found:

> As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant endorsed crying easily, but after a change in her medications, she reported she was no longer having this issue. She also is functionally independent concerning her personal care needs and is consistently described as having appropriate grooming and dress. She also stated she does not struggle to get up in the morning.

Tr. 22. The ALJ then addressed Dr. Barsukov and Dr. Tomak's opinions in formulating his RFC at step four. Tr. 28-29. The ALJ discounted both doctors' opinions as to Plaintiff's limitations in adapting and managing oneself because:

> She is consistently noted to have appropriate hygiene and clothing. She also specifically testified that she does not struggle to get up in the morning, and instead regularly has to work to get her daughter up and to school. She is also able to manage her household and although it appears to be the main cause of her stress, she has been a single mother for several years.

Tr. 29.

7 – OPINION & ORDER

The ALJ has not provided sufficient reasons supported by substantial evidence for rejecting these opinions. Namely, the cited evidence—that Plaintiff can take care of herself, get up in the morning, get her daughter to school, and manage her household as a single mother—is not inconsistent with the doctors' opinions that Plaintiff needs a "predictable work environment" with "minimal deviation." Tr. 28-29. The listings describe the ability to "adapt and manage oneself" as:

> [T]he abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

*See* Listing 12.00. Here, the doctors' specific limitations regarding the predictability of Plaintiff's work environment appear to go to Plaintiff's ability to adapt to changes in the workplace. Plaintiff's ability to get up in the morning, maintain appropriate hygiene, and manage her household do not contradict these specific limitations.

Moreover, Plaintiff described limitations in these abilities that appear to support the doctor's opinions. For example, contrary to the ALJ's findings, Plaintiff described struggling to get her daughter to school in the morning. Tr. 50. She testified that it could take a half hour to three hours depending on her daughter's distress. Tr. 50. On days when it takes three hours, Plaintiff must take a nap after she returns home and is "completely stressed out and unfocused." Tr. 50. Similarly, Plaintiff's ability to manage her household is limited. Plaintiff testified that she naps half the week, cannot finish tasks at least one or twice a day, can only do a few dishes at a time, and sometimes requires help preparing meals. Tr. 51-52. In sum, the ALJ's reasons for rejecting Dr. Barsukov and Dr. Tomak's opinions are not supported by substantial evidence in

8 – OPINION & ORDER

the record. Accordingly, the Court finds that the ALJ erred in discounting the state agency physician's opinions as to Plaintiff's need for a "predictable work environment" with "minimal deviation." Tr. 28-29.

The Court cannot conclude that this error was harmless.[3] At the hearing, the VE testified that an individual with Plaintiff's RFC who could only perform work "involving occasional changes in the work routine and setting" could work as a marker, routing clerk, or production assistant. Tr. 56-57. The Court, however, cannot conclude that limiting Plaintiff to "occasional changes in a work routine or setting" is equivalent to a predictable work environment with minimal deviation. *See* SSR 83-10 (defining "occasionally" as "up to one third" of the time"). In other words, the Court cannot conclude on this record that a predictable work environment with minimal deviation is one where there may be "occasional changes in a work routine or setting." *See Leach v. Kijakazi*, 70 F.4th 1251, 1257-58 (9th Cir. 2023) (finding the ALJ erred where the RFC limited plaintiff to a "work environment that is predictable <u>and</u> with <u>few</u> work setting changes" but the hypothetical presented to the vocational expert "described a hypothetical person who 'can work in an environment with <u>occasional</u> changes to the work setting'") (emphasis in original). Accordingly, the Court remands this case for further administrative proceedings.

///

///

---

[3] The Court, however, declines to credit-as-true the opinions of Drs. Barsukov and Tomak. Plaintiff makes no argument to support her request to remand this case for benefits. Nor does Plaintiff otherwise demonstrate how the opinions of these doctors are consistent with the record. *See, e.g.*, Tr. 306 (answering "okay" to the question "[h]ow well do you handle changes in routine?" in Plaintiff's function report). Further, the Court cannot conclude on this record that Plaintiff would be disabled had the ALJ included these limitations in his residual functional capacity, particularly in light of the VE's testimony that a person who is limited to work "involving occasional changes in the work routine and setting" could work as a marker, routing clerk, or production assembler. Tr. 56-57.

9 – OPINION & ORDER

## II.    Opinion of Dr. Resendiz

In arguing that the ALJ failed to appropriately consider Plaintiff's varicose veins, Plaintiff argues that the ALJ erred in his treatment of the opinion of Joseph Resendiz, DO.[4] Dr. Resendiz was a consultative examiner who assessed Plaintiff's physical impairments in June of 2022. Tr. 708. In his report, Dr. Resendiz identified Plaintiff's chief complaints as: low back pain, knee arthritis, and diabetes. Tr. 708. Dr. Resendiz diagnosed Plaintiff with chronic low back pain attributed to degenerative disc disease, left-sided sciatica, diabetes mellitus type 2, peripheral neuropathy, obesity, right knee pain caused by degenerative joint disease, psoriasis, and varicose veins. Tr. 712. Dr. Resendiz finds that Plaintiff would have significant physical limitations, all of which he attributes as a group—and without explanation—to most of Plaintiff's physical impairments, including back pain, sciatica, neuropathy, obesity, knee pain, and varicose veins. Tr. 712-13. Varicose veins are otherwise mentioned only once in the opinion—in Dr. Resendiz's physical examination of Plaintiff, he notes "thickened varicose veins in bilateral lower extremities." Tr. 710.

In finding Plaintiff's varicose veins nonsevere at step two, the ALJ determined that they "have caused only transient or mild symptoms and limitations, including vocational limitations,

---

[4] Plaintiff characterizes this as a step two error, noting that the ALJ found Plaintiff's varicose veins to be nonsevere and then proceeded to write that her "varicose veins cause more than a minor limitation in the claimant's ability to perform basic work activities." Tr. 21. Even assuming this is not a scrivener's error, as the Commissioner suggests, any step two error would be harmless because the ALJ addressed—and appropriately discounted—the only evidence related to Plaintiff's varicose veins at step four and in formulating his RFC. Thus, any step two error was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Graybeal v. Astrue*, No. 3:10–cv–06387–PK, 2011 WL 6019434, at *6 (D. Or. Nov. 2, 2011) ("An ALJ's erroneous finding that an impairment is non-severe constitutes harmless error, however, if the ALJ resolves step two in the claimant's favor and properly considers limitations imposed by the impairment at other steps of the sequential process.").

10 – OPINION & ORDER

are well controlled by medications, or are otherwise not adequately supported by the medical evidence in the record." Tr. 20. The ALJ went on to explain that "[t]he only treatment noted for [Plaintiff's varicose veins] in the record is the suggestion by her primary care provider to wear compression stockings." Tr. 21. In formulating the RFC, the ALJ further noted Dr. Resendiz's diagnosis of varicose veins and significant limitations, ultimately discounting this opinion:

> This opinion is not persuasive as it is not supported by or consistent with the medical evidence of record. Dr. Resendiz did not report any findings in his physical exam of the claimant to support these limitations and did not explain this discrepancy. For instance, on his exam, she had negative straight leg raises bilaterally, full range of motion of her back, full motor strength in all extremities, and intact sensation throughout. Thus, not only are his limitations not justified by his examination of the claimant, it is also unclear how he diagnosed her with left sided sciatica or peripheral neuropathy other than by the claimant's subjective report of symptoms.

Tr. 29.

The Court finds that the ALJ did not err in discounting Dr. Resendiz's opinion and, by extension, failing to include any limitations related to Plaintiff's varicose veins in the RFC. The ALJ specifically discounted Dr. Resendiz's opinion as unsupported by and inconsistent with the record and by the physical exam itself. The Court agrees with the ALJ's assessment. As the ALJ concluded earlier in his decision, there is virtually no discussion or treatment of Plaintiff's varicose veins in the record other than suggestions by Plaintiff's doctor to wear compression stockings. *See, e.g.*, Tr. 407 ("varicose vein—Needs compression stockings. Advised to pick these up."), 746 ("varicose veins—compression stockings"). And, as the ALJ notes, there is no support in the opinion itself for the extreme limitations attributed to Plaintiff's varicose veins. *See* Tr. 708-13. Nor does Plaintiff identify—in the briefing or the elsewhere in the record—any limitations that she experiences because of her varicose veins. As the ALJ's decision to discount

11 – OPINION & ORDER

Dr. Resendiz's opinion is supported by substantial evidence in the record, the Court finds that the ALJ did not err.

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED: ___March 31, 2026_____.

_____
MARCO A. HERNÁNDEZ
United States Senior District Judge

12 – OPINION & ORDER